THOMAS A. RYER, DEFENDANT IN ERROR, v. ADOLPH M. TURKEL, PLAINTIFF IN ERROR.

Submitted July 8, 1907—Decided March 2, 1908.

1. When a cause is removed by *certiorari*, from an inferior court to the Supreme Court, the function of the writ is that of a writ of error. In such case the Supreme Court accepts the findings of the inferior court upon the facts if there be any legal evidence to warrant them ; and, when the judgment of the Supreme Court is removed into the Court of Errors and Appeals, this court in turn accepts the findings, subject only to a like inquiry for some legal evidence.
2. Considering only those points of the plaintiff in error which were taken in the District Court and, which were raised and determined in the Supreme Court, or were necessarily involved in the decision of that court, the Court of Errors and Appeals inquires whether there be ground for reversal : (*a*) in that the plaintiff below had not, by himself alone, produced a purchaser ready and willing to enter into a contract of purchase on the terms authorized in writing ; or (*b*) in that the plaintiff below had not brought his principal and the proposed purchaser to an agreement for sale on the terms mentioned in the authority to sell.
3. (*a*) When an act to be done is ministerial, or mechanical, only, the agent may employ another to do it ; and, in such case, the act is as well performed by the sub-agent as by the agent. (*b*) The rule that, as between the parties themselves, oral evidence is not admissible to contradict a written agreement, does not, in a proper case, forbid the throwing of light upon the meaning of the agreement by evidence of the circumstances of the parties to it, or of their conduct after its execution, or of the condition of its subject-matter. There was no legal error in the application of either principle in the courts below.
4. The right of the agent or broker to his commissions is complete when he has procured a purchaser able and willing to conclude a bargain on the terms on which he was authorized to sell. Such right is not to be defeated by any default of the principal.

On error to the Supreme Court.

This was an action in contract brought in the Second District Court of Jersey City by Thomas A. Ryer (the present defendant in error) against Adolph M. Turkel (the present plaintiff in error) and Annie Turkel, his wife.

The state of demand alleged an indebtedness of the defendants to the plaintiff in the sum of $237.50, for the price and value of work done, and in a like sum for money found to be due and owing on an account stated, and to the state of demand was annexed a bill of particulars and a copy of the agreement upon which the demand was founded. (These will be found on a later page.) The defendants filed no written pleadings, but the nature of the defence will sufficiently appear.

When the case came to trial, Thomas A. Ryer, Charles L. Cast, Frank E. Older and Harriet E. Phelps were sworn for the plaintiff, and three exhibits offered. For the defendants Adolph M. Turkel was sworn.

Whereupon the District Court ordered a nonsuit as to the defendant Annie Turkel, and gave judgment against the defendant Adolph M. Turkel for $237.50 damages and $16.07 costs of suit.

The judgment so recovered was removed into the Supreme Court by writ of *certiorari*.

Upon an allegation of diminution of the record, the judge of the Second District Court was directed to certify as to certain facts, if found, and certain proceedings before him, whereupon he certified as follows:

1. I found that there was an agreement, in writing, made by the defendant Adolph M. Turkel, with the plaintiff, Thomas A. Ryer, a copy of which is annexed. See *post*.

2. I found that the negotiations for sale of said premises were had, and the proposed purchaser was produced by one Frank E. Older, an employe of the plaintiff, Thomas A. Ryer, and acting for him, and that the terms and conditions upon which the proposed purchaser, one Harriet E. Phelps, was willing to purchase said premises were in writing, a copy of which is annexed. ·See *post*.

3. At the close of the plaintiff's case, a motion was made for a nonsuit in favor of the defendant Adolph M. Turkel, on the following grounds:

(a) Because the evidence did not show that said Thomas

A. Ryer had produced a purchaser, ready and willing to enter into a contract on the terms designated in the agreement, in writing, between the plaintiff and defendant.

(*b*) Because when the said Adolph M. Turkel gave the said Thomas A. Ryer authority, in writing, to sell the premises said Ryer had no right to delegate his authority to another, and inasmuch as the testimony showed that the alleged sale was brought about through one Frank E. Older, the said Thomas A. Ryer had no right to the commissions designated in the authority given to him.

(*c*) Because the said Thomas A. Ryer never brought the said Adolph M. Turkel and Harriet E. Phelps to an agreement on the terms mentioned in the authority to sell, and therefore he was not entitled to his commissions.

The motion for a nonsuit was denied.

4. I found that the defendant Adolph M. Turkel, at the time of signing the exhibit firstly annexed, instructed the plaintiff, Ryer, to sell the premises at the price and on the terms named thereon. The defendant Turkel testified that he told Ryer, the plaintiff, that the property was to be sold for cash.

5. At the close of the whole case, a motion was made for judgment in favor of the defendant Adolph M. Turkel, upon the same grounds as those urged for a nonsuit.

This motion was also denied, and judgment was given for the plaintiff.

The bill of particulars and copy of the agreement annexed to the state of demand appear to have been the same as the agreement, in writing, firstly annexed to the certificate of the judge of the Second District Court. They were upon the obverse and reverse of a card, and are as follows:

"Adolph M. Turkel and Annie Turkel
"To Thomas A. Ryer.
"Commissions, two and a half per cent. on
ninety-five hundred dollars, $237.50.
"Mr. A. M. Turkel, Address, 305 Railroad Ave.

"I hereby authorize Thomas A. Ryer to sell or exchange the premises described on the other side of this card, at the price and upon the terms hereon named, and hereby agree to pay him two and one-half per cent. of the gross amount of the sale, the amount in no case to be less than twenty-five dollars.                              A. M. TURKEL,

    "Witness:                                *Owner.*
        "CHARLES L. CAST."

| Premises, 2 6-Family Flats. | | Location, 131 Manning Ave., 575 Grand St. | | | Roof, Tin. |
|---|---|---|---|---|---|
| Size, House, 25x100 Lot, 25x100 | | Stories, 3 4 | Material, Frame. | | Heat, Stove. |
| No. Rooms, 3 Rooms to Floor, 4 " " " | | Water, Tubs. | Light, Gas. | | Rental, $104 a month, $1248 a year. |
| Sewer, Yes. | Stable, No. | W. C. Yes. | Bath, No. | | Encumbrances, $6000.00 5 % |
| Taxes; Water Rents. | | Price, $9500.00 | | Trade, | Terms, &c. |

Date, August 23d.

The exhibit secondly annexed to the certificate of the judge was, so far as of value, as follows:

"Agreement made the eighteenth day of January, A. D. nineteen hundred and six, between Annie Turkel and A. M. Turkel, her husband, * * * of the first part, and Harriet E. Phelps, * * * of the second part.

"The said party of the first part, in consideration of the sum of ninety-five hundred dollars, to be fully paid as here-

inafter mentioned, hereby agrees to sell unto the said party of the second part all that certain lot or parcel of land and premises situate in the city of Jersey City * * * and known as 575 Grand street and 131 Manning avenue, these properties running through from street to street.

"The said party of the second part hereby agrees to purchase said premises at the said consideration of ninety-five hundred dollars, and to pay the same as follows:

| | |
|---|---:|
| "January 18th, deposit, to be held by Thomas A. Ryer in trust, until passing of title.......... | $250 00 |
| "On or before March 1st, on delivery of deed, the party of the second part to assume a straight mortgage, now on the premises, bearing interest at five per cent. per annum, for three years.... | 6,000 00 |
| "On or before March 1st, on delivery of deed, cash ................................. | 3,250 00 |
| | $9,500 00 |

"* * * Thos. A. Ryer, having made this sale, is entitled to a commission of 2½ per cent. on the gross amount of sale, to be paid by the party of the first part."

The above agreement was signed by Harriet E. Phelps in the presence of F. E. Older as witness.

The special reasons filed on the return of the writ of *certiorari* were, *firstly,* that when the plaintiff below rested his case the District Court refused to nonsuit the plaintiff for the reasons (*supra*) at that time urged by the defendant; and *secondly,* that the said court refused to give judgment in favor of the defendant below when moved for on the grounds (*supra*) at that time given.

The judgment of the Second District Court was affirmed by the Supreme Court, and the judgment of the latter court has been removed into this court by writ of error.

Error was assigned here in three particulars: *firstly,* that in affirming the judgment of the District Court the Supreme Court, in effect, decided that the defendant in error had pro-

duced a purchaser ready and willing to enter into a contract of purchase on the terms designated in the agreement, in writing, between the plaintiff and defendant in error; *secondly*, that the Supreme Court, in effect, decided that the findings of the trial court were based upon the last-mentioned agreement and oral proof that would warrant the findings, although there was no evidence before the Supreme Court to show that oral proofs had been taken by the trial judge which would sustain his findings; and, *thirdly*, that the Supreme Court, in effect, decided that it appeared from the evidence that the defendant in error brought the plaintiff in error and the proposed purchaser, Harriet E. Phelps, to an agreement on the terms mentioned in the authority to sell given by the plaintiff in error, although there was no legal evidence thereof.

For the plaintiff in error, *Henry J. Melosh* and *Louis G. Morten*.

1. The only evidence of the terms on which the plaintiff in error (defendant in trial court) was willing to sell his house and land is found in the card of authorization. The interpretation thereof is one of law, and, inasmuch as terms of sale are not given in any particular, the only legal conclusion is that the price was to be $9,500 in cash.

2. There was no evidence that the defendant in error brought the alleged purchaser, Harriet E. Phelps, and the plaintiff in error to an agreement on the terms mentioned in the authorization of sale. He is not entitled to commissions if he modified the contract of authorization without the knowledge and consent of his principal.

3. There was no evidence before the Supreme Court to show that any oral proof had been taken before the District Court respecting the terms of sale, except the testimony of the plaintiff in error that he told the defendant in error to sell for cash, and this was uncontradicted. Hence there was no evidence to support a finding by the District Court that a sale for $3,500 in cash and the assumption of a mortgage for $6,000 was within the intent of the parties.

On the brief for the defendant in error, *Augustus Zabriskie, contra.*

The opinion of the court, upon the case as above stated, was delivered by

GREEN, J. 1. There are some legal rules, not seriously denied in argument and not to be discussed at length, which may well be stated at the outset, as thereby our reasoning may be clarified and the basis of it made sure.

In a case like the present the writ of *certiorari* is used not simply to remove the cause from the inferior court, but to correct some error which has crept into the proceedings therein. *Ayres* v. *Bartlett,* 2 *Gr.* 330, 332 (1834). The function of a writ is that of a writ of error. *Coles* v. *Blythe,* 40 *Vroom* 666, 668 (1903). The Supreme Court in such a case does not settle disputed facts or review the evidence, but accepts the findings of the inferior court upon the facts, if there be any legal evidence to warrant such findings. No intendment will be taken against the judgment below, rather in favor of it. *Roehers* v. *Remhoff,* 26 *Id.* 475, 478 (1893) ; *Somers* v. *Wescoat,* 37 *Id.* 551, 552 (1901) ; *Britton* v. *McDonald,* 14 *Id.* 591, 593 (1881) ; *Demster* v. *Frech,* 22 *Id.* 501, 502 (1889). When, on error to the Supreme Court, the judgment is again removed into the Court of Errors and Appeals, this court, in its turn, accepts the findings, inquiring only whether there be any legal evidence to sustain them. *Coles* v. *Blythe,* 40 *Id.* 666, 669 (1903) ; see, also, *Doolittle* v. *Willet,* 28 *Id.* 398, 399 (1894). It being now established that, when the trial has been before the judge of the District Court without a jury, the proper practice is to send up the facts found by him from the testimony, and not the testimony itself—*Van Vechten* v. *McGuire,* 41 *Id.* 657, 659 (1904)—we may not assume, when no attempt is made to perfect, or, in a proper case, to dispute the findings, that the trial court either received evidence that was inadmissible or irrelevant—*Wallace* v. *Hendee,* 39 *Id.* 574, 576 (1902)—or, on the other hand, found as a fact that which had no evidence to support it. *Barclay* v. *Brabston,* 20 *Id.* 629, 631 (1887). From every

point of view, in cases like the one in hand, the findings of facts below should be accepted in the Appellate Court. *Gore* v. *Herring,* 43 *Id.* 423 (1905).

2. Under well-settled principles we consider only those points of a plaintiff in error in this court which were taken in the District Court and which were raised and determined in error in the Supreme Court, or which, being involved in the case made in the Supreme Court, might or should have been there determined. *Oliver* v. *Phelps, Spenc.* 180, 181, 185 (1843); *S. C.* on error, 1 *Zab.* 597, 609 (1845); *Trent Tile Co.* v. *Fort Dearborn National Bank,* 25 *Vroom* 33 (1891); *S. C.* on error, *Id.* 599 (1892); *Van Alstyne* v. *Franklin Council,* 40 *Id.* 15, 16 (1903); *S. C.* on error, *Id.* 672, 673 (1903); *Leaver* v. *Kilmer,* 42 *Id.* 291, 292 (1904).

Addressing ourselves to the legal merits of this case, we now inquire whether, in the District Court, Ryer, the plaintiff, should have been nonsuited, or judgment final should have been given for Turkel, the defendant, (*a*) because Ryer had not, by himself alone, produced a purchaser ready and willing to enter into a contract of purchase on the terms mentioned in the agreement, in writing, between Turkel and Ryer, and therefore was not entitled to commissions, or (*b*) because Ryer had not brought Turkel, his principal, and the proposed purchaser, Harriet E. Phelps, to an agreement for sale on the terms mentioned in the authority to sell so given by Turkel to Ryer, and, on that ground, was not entitled to his commissions. It will be observed that the first branch of the inquiry has to do with the presence or absence of personal service on the part of Ryer, and that the second branch has to do with the legal import of the power conferred by the card of authorization and of the contract to which Harriet E. Phelps had subscribed her name.

3. (*a*) It may indeed be true that, under the maxim, *delegata potestas non potest delegari,* an agent or broker whose employment involves any exercise of judgment or discretion may not transfer to another the right and power to discharge his own duty. *Cl. & S. Ag.,* § 342; *Dwelling House Insurance Co.* v. *Snyder,* 30 *Vroom* 18, 20 (1896). Nevertheless,

when an act to be done is ministerial or mechanical only, the agent may employ another to do it, and, in such case, the act is as well performed by the sub-agent as by the agent. *Cl. & S. Ag.,* § 345*d; Titus et al.* v. *Cairo and Fulton Railroad Co.,* 17 *Vroom* 393, 418 (1884).

The finding of the trial court was that Older was an employe of Ryer and acting for him, and there was nothing whatever to show that Older's part in procuring a purchaser was other than ministerial, or that Ryer had attempted to divest himself of his functions or of his responsibility to Turkel, his principal. No legal error is perceived in the case below so far as this branch of the inquiry is concerned.

(*b*) It is to be accepted as settled law that, as between the parties themselves, oral evidence is not admissible to contradict a written agreement. *Leslie* v. *Leslie,* 5 *Dick. Ch. Rep.* 155, 160, 161 (1892), and *Bandholz* v. *Judge,* 37 *Vroom* 80, 85 (1901), are recent illustrations of the rule in equity and at law. Nevertheless, the rule does not, in a proper case, forbid the throwing of light upon the meaning of the written agreement, by evidence of the circumstances of the parties to it, or of their conduct after its execution, or of the condition of its subject-matter. *Axford* v. *Meeks,* 30 *Id.* 502, 503 (1896); *Naughton* v. *Elliott,* 2 *Robb.* 259, 267 (1904).

The trial court found that there was an agreement, in writing, between the parties to this suit (*vide* the same), and that the terms and conditions upon which the proposed purchaser, Harriet E. Phelps, was willing to purchase were also in writing (*vide* the same); and further, the trial judge received the testimony of Turkel that he had told Ryer that the property was to be sold for cash. From the findings of fact three conclusions may have been possible—*firstly,* that Turkel had authorized Ryer to sell the equity of redemption for $9,500 in cash, thus making the total cost to the purchaser $15,500; *secondly,* that Turkel had given authority to sell for $9,500 as the whole price, of which $6,000 were to be used at once in paying off the mortgage encumbrance; and, *thirdly,* that Turkel had given authority to sell for $9,500 as the whole price, of which $3,500 were to be paid to him, and

$6,000 were to be kept back by the purchaser, in order to the future discharge of the mortgage debt. The first of these conclusions seems to have been suggested by no one, either at the trial or on the argument upon the reasons in *certiorari*, and it should not now be adopted here. The second is that for which the counsel of the plaintiff in error contends in his present brief; but the obvious objection is, that the executing of the authority in that form was impossible without the consent and co-operation of the mortgagee, inasmuch as, from the uncontradicted evidence, the mortgage debt would not be due and payable until three years should have elapsed. That an authorization in that form was the intent of the parties to the written agreement was and is not to be accepted. The third and last conclusion was, undoubtedly that to which the trial court came in giving judgment for the plaintiff, inasmuch as, in order so to do, the judge must have found further that the terms and conditions upon which the purchaser produced by Ryer was willing to buy were within the scope of the authority given by Turkel to him. An authorization to sell at a price, of which part is to be kept back by the purchaser for the discharge of a mortgage debt, is not unusual or unlawful in this state. *Heid* v. *Vreeland,* 3 *Stew. Eq.* 591, 593 (1879).

If the conclusion of the District Court judge was one of fact simply, we do not review the finding on writ of error. *Brewster* v. *Banta,* 37 *Vroom* 367, 369 (1901); *Snyder* v. *Commercial Union Assurance Co.,* 38 *Id.* 626, 627 (1902); *Suburban Land Improvement Co.* v. *Vailsburgh,* 39 *Id.* 311, 312 (1902). If the conclusion was on a mixed question of fact and of law, then it is not to be disturbed in error, if the conclusion was legally inferable from the facts proven. *Stout* v. *Leonard,* 8 *Id.* 492, 493 (1874); *Delaware, Lackawanna and Western Railroad Co.* v. *Newark,* 34 *Id.* 310, 312 (1899); *Burr* v. *Adams Express Co.,* 42 *Id.* 263, 270 (1904). We perceive no legal error so far as the second branch of our inquiry is concerned.

It may be worth while to remark that the oral testimony of Turkel, to the effect that the property was to be sold for cash,

seems either to have supplied an obvious omission in the card of authorization—*Ackens* v. *Winston,* 7 *C. E. Gr.* 444, 446 (1871)—or though, perhaps, not in strictness cumulative— *Dundee Manufacturing Co.* ads. *Van Riper,* 4 *Vroom* 152, 156 (1868)—to have tended to support the same conclusion which the other evidence supported. In failing, therefore, to pass upon the strict propriety of Turkel's testimony, the present opinion cannot become a precedent for the admission of oral testimony in general where there is a contract in writing.

4. The undisturbed findings of fact being that the plaintiff below, Ryer, had procured one Harriet ·E. Phelps to be an able and willing purchaser of the house and land upon the terms and conditions on which the defendant below, Turkel, had authorized a sale, the law applicable to the facts is not doubtful.

The general rule is, that the right of the agent or broker to his commissions is complete, when he has procured a purchaser able and willing to conclude a bargain on the terms on which he was authorized to sell. *Hinds* v. *Henry, 7 Vroom* 328, 332, (1873) ; *Runyon* v. *Wilkinson, Gaddis & Co., 28 Id.* 420, 421 (1894) ; *Crowley Company* v. *Meyers,* 40 *Id.* 245, 248 (1903) ; *Courter* v. *Lydecker,* 42 *Id.* 511, 512 (1904). Such right is not to be defeated by any default of the principal. *Hinds* v. *Henry, supra; Somers* v. *Wescoat,* 37 *Vroom* 551, 552 (1901). The plaintiff below should not have been nonsuited, neither should judgment have passed for the defendant below on any ground by him alleged.

The right of recovery having been properly adjudged in the District Court, and confirmed in the Supreme Court, the judgment will be affirmed here, with costs, and it is so ordered.

*For affirmance*—PITNEY, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 12.

*For reversal*—None.